IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| DHAFER SALEM,<br><br>Plaintiff,<br>v.<br><br>MARLAB INC. (NV) and<br>MARLAB INC. (AL) d/b/a<br>MARLAB STAFFING,<br>MARLAB INCORPORATED S-CORP.,<br>MARLAB LOCUMS, and<br>BALRAM BHANDARI,<br>SHIV RAJ BHANDARI,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>Case No. |

**COMPLAINT**

COMES NOW Plaintiff, Dr. Dhafer Salem, by and through counsel, for his Complaint against Defendants, and states as follows:

1. This Court maintains subject-matter jurisdiction over this civil action and personal jurisdiction over each Defendant.

2. Defendants transact substantial business in Michigan and specifically in this District through recruitment and staffing activities directed at this forum.

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists between all parties and the matter in controversy exceeds $75,000.

4. Venue lies in this District as Defendants transact business here, because a substantial part of the events giving rise to the claims occurred here, and because the contract at issue in this dispute was formed within this District.

5. Plaintiff, Dr. Dhafer Salem, is a physician who resides and is a citizen of Michigan whose residence is located in Grand Blanc Michigan.

6. On April 16, 2025, Plaintiff and an entity styled on the face of the document as Marlab Incorporated S-Corp., 23434 North 78th St., Scottsdale AZ 85255, both executed the written Provider Agreement at issue. See Exhibit 1.

7. The agreement text and signature block identify the contracting party as "Marlab Inc., S-Corp," with the printed name Bairam Bhandari opposite Plaintiff Dr. Salem's signature. That clause appears linked to an Alabama corporation named Marlab Inc. that dissolved prior to the entry of this Agreement.

8. Before the Agreement's date, The Alabama corporation "Marlab Inc." dissolved on June 14, 2024, by filing accepted by the Alabama Secretary of State by a written consent executed June 13, 2024 by Shiv Raj Bhandari as the sole stockholder.

9. Defendant Marlab Inc. is a Nevada domestic corporation formed on May 16, 2023, Nevada Business ID NV20232790262, with its Director and noncommercial registered agent listed as Balram Bhandari, 1617 Queen Victoria Street, Las Vegas, Nevada 89144.

10. Defendant Marlab Incorporated S-Corp. holds itself out as a physician-staffing and placement business.

11. Defendants conduct business as Marlab Staffing and Marlab Locums and list 23434 North 78th Street, Scottsdale, Arizona 85255 as their business address.

12. On information and belief, "Marlab Incorporated S-Corp." or "Marlab Inc., S-Corp" is a misdescription or misnomer used interchangeably within the Marlab enterprise.

13. References to "Marlab Staffing" and "Marlab Locums" are trade names used in public-facing materials to identify the Marlab enterprise and are treated herein as names under which the enterprise acted and conducted business.

14. The Marlab brand moved across entities and jurisdictions. After the Alabama company dissolution, public-facing materials continued to present “Marlab Inc.” and “Marlab Locums” at the Scottsdale, Arizona address, including when Plaintiff entered the agreement.

15. Defendant Balram Bhandari is a natural person who directs and controls Marlab-branded entities, is listed in Nevada as Director and noncommercial registered agent of Marlab Inc., appears in Florida filings for Marlab Associates LLC, and is the individual whose printed name appears on the Provider Agreement signature block as the signer for “Marlab Inc., S-Corp” in the agreement at issue with Plaintiff.

16. Defendant Shiv Raj Bhandari is a natural person who directs and controls the Marlab-branded entities. He executed the Alabama corporation’s written consent to dissolve as Stockholder on June 13, 2024 and appears in the Florida record as an authorized person of Marlab Associates LLC.

17. The Nevada corporation Marlab Inc. was formed in 2023 with Balram Bhandari listed as Director and noncommercial registered agent at the Las Vegas address.

18. A Florida limited liability company, Marlab Associates LLC, operated in 2023 and 2024 with Shiv Bhandari and Balram Bhandari listed as authorized persons before dissolving in September 2024.

19. The Marlab-branded entities and the individual Defendants operated as a unified enterprise. These facts show a single enterprise that used the “Marlab” name while shifting the incorporated form and state. The same individuals dominated and controlled the entities, used the “Marlab” name and Arizona addresses interchangeably, and continued the physician-staffing business throughout.

20. Under these facts the Court may disregard the corporate form and impose alter-ego, enterprise, and successor liability on the corporations and on the individual Defendants to prevent injustice.

21. To the extent "Marlab Inc., S-Corp in the agreement refers to the dissolved Alabama corporation, the contracting name misdescribes a non-existent entity. The individual Defendants purporting to act for that nonexistent corporation are personally liable.

22. The Marlab-branded entities and the individual Defendants operated as a single enterprise. The same individuals directed and controlled the business while continuing the same recruitment and placement operations and used the "Marlab" names interchangeably.

23. Equity requires that the Court disregard the corporate separateness to prevent injustice and impose liability on all of the Defendant corporate entities and the individual Defendants for obligations owed to Dr. Salem under the Provider Agreement at issue.

24. The Marlab business is subsumed under the same leadership, the same brand, the same business model, and the same public contacts.

25. Observance of the corporate form would sanction a fraud or promote injustice. The Court should disregard corporate separateness.

26. Plaintiff requests that the Defendants be held liable jointly and severally entering findings and judgment that impose alter-ego, single-enterprise, successor liability, and personal liability against the Defendants.

## **FACTUAL BACKGROUND**

27. Marlab represents on its public website that it empowers physicians, handles logistics, including travel reimbursements, hotel accommodations, and car rentals, and provides expert guidance on credentialing, licensure, and placement for Physicians.

28. On April 16, 2025, the Marlab Defendants presented the written Provider Agreement to Dr. Salem with Marlab's authorized representative Balram Bhandari having first executed the document prior to presentment to Dr. Salem. Dr. Salem then counter-signed the Provider Agreement, which was the last act necessary to make the contract a binding agreement, using Docusign e-signature on the agreement from his home location in Michigan identified as the Provider under the agreement. See Exhibit 1.

29. Section 2, captioned "Work to Be Performed," obligates Marlab to use its best efforts to identify and secure assignment opportunities for the Provider at client facilities. This section further provides Marlab's role as the placing party and payor for each assignment.

30. Section 3(2) requires that each assignment be confirmed by Marlab in a written Confirmation Letter that sets out the assignment particulars. By accepting an assignment, the Provider agrees to the terms of the Confirmation Letter.

31. Section 5 fixes compensation at the rate agreed when Marlab presents the assignment opportunity in the same Confirmation Letter.

32. Section 7 governs expense reimbursement. Reimbursable expenses are those listed in writing by Marlab's scheduler and to be supported by documentation from the Provider.

33. Section 12 contains a prevailing party attorneys' fees clause entitling the prevailing party to recover in litigation as to the agreement to reasonable attorneys' fees and costs.

34. Marlab's onboarding and credentialing packet and communications further set the expectation that Marlab functions as the administrator and intermediary for licensing, credentialing, and onboarding, and that it guides the Provider and coordinates with Marlab's client facilities so that a confirmed start proceeds as provided in the Confirmation Letter.

35. Consistent with that framework, Marlab represented to Dr. Salem that it would coordinate the placement and credentialing with Mercy Hospital Joplin, confirm and provide the

agreement on the schedule, and advise when he was all approved by Mercy Hospital and therefore cleared to travel to the assignment.

36. In the weeks before the start date, Mercy's credentialing coordinator worked with and on behalf of Dr. Salem to complete Missouri licensure, the Missouri BNDD registration, and the DEA address update, with the coordinator confirming everything completed except at one point early in the process remaining items of an updated DEA entry and a twelve-month case-log set then provided by Dr. Salem in advance of the assignment.

37. Then, beginning in early June 2025, Marlab represented that Dr. Salem's Mercy Hospital Joplin assignment was all set, that he was cleared to begin, and that he should book travel.

38. Marlab told Dr. Salem plainly and repeatedly that his credentialing at Mercy was complete.

39. On June 11, 2025, Shiv Bhandari texted on behalf of Marlab that "everything is set for Mercy Joplin," provided a schedule of confirmed shifts and the Mercy Joplin practice manager's contact information, and directed Dr. Salem to book travel.

40. Dr. Salem then still asked again just to make sure that everything was all set because he was able to take another assignment if Mercy was not fully ready. Marlab replied that credentialing was finished and he was all set.

41. Then, Plaintiff checked again in a subsequent call and at that time Bhandari again reported to Dr. Salem that he received direct confirmation from Mercy that the assignment was all set and he again told Dr. Salem that he was cleared to begin.

42. Each time Dr. Salem sought reassurance before traveling, Marlab reaffirmed that credentialing was complete.

43. Marlab then provided Dr. Salem with the first block of ICU shifts, orientation details, and confirmed that the manager at the hospital would meet him onsite.

44. On June 18, 2025, Marlab issued multiple signed Confirmation Letters placing Dr. Salem as an Intensivist at Mercy Joplin. The letters confirmed a June 19 orientation, clinical shifts beginning June 20, additional July and August dates, and further September dates, at a rate of three hundred dollars per hour for twelve-hour shifts. Although the letters recite "subject to completion of credentialing," Marlab had already told Dr. Salem repeatedly on multiple occasions that credentialing was complete and that he should travel and begin the assignment.

45. On June 19, 2025, in reliance on Marlab's confirmations, Dr. Salem traveled to Joplin, Missouri and presented for orientation. Mercy's practice manager met him in the lobby, told him he was good, retrieved his badge, and escorted him through onboarding. He received building access, computer and EMR access, and patient information in preparation to assume ICU service.

46. Dr. Salem contemporaneously incurred travel and lodging tied to the Mercy assignment. The reimbursement form submitted June 25, 2025 identifies Mercy Joplin and itemizes a nonrefundable hotel charge of $1,083.93, a National Car Rental charge of $239.88, and a flight of $1,166.06, for a total of $2,489.88.

47. As orientation approached and during orientation, Mercy asked for additional references and confirmations regarding credentialing despite what Marlab previously indicated to Dr. Salem. In response, on June 20, 2025, Dr. Salem secured further Professional Peer References and Competency Evaluations.

48. Despite a full day of EMR training on June 19 and Dr. Salem's efforts to address new credentialing requests, Mercy canceled the June 20 start and subsequent dates of work for Dr. Salem.

49. The Marlab Defendants described the situation to Dr. Salem as highly unusual given its prior credentialing of physicians at Mercy Joplin.

50. The Marlab Defendants continued to represent to Plaintiff while in Joplin Missouri that the assignment was going to proceed while communicating with Mercy Hospital Joplin as well.

51. The Confirmation Letters and schedule communications document more than thirty twelve-hour shifts across June, July, and August, with additional September dates, for a total of approximately thirty-five shifts that Dr. Salem reserved on his calendar in reliance on Marlab's confirmations.

52. Whether the breakdown originated with Mercy Joplin, with Marlab, or with both is immaterial to Marlab's duties under the Provider Agreement. As the contracting party, Marlab bore responsibility to secure the assignments, coordinate credentialing to completion for the confirmed start, and ensure the engagement it represented as ready in fact was ready.

53. Dr. Salem sustained pecuniary losses that include lost shift income, unreimbursed travel and lodging, and uncompensated orientation and onboarding time. The scheduled Mercy assignment equals approximately thirty-five twelve-hour shifts at three hundred dollars per hour, exclusive of expenses and orientation and EMR training time remaining unpaid.

## <u>COUNT I – BREACH OF CONTRACT</u>

54. Plaintiff realleges the preceding paragraphs.

55. A valid, enforceable Provider Agreement existed between Plaintiff and Defendants.

56. Material duties of Marlab under the Provider Agreement include using best efforts to identify and secure assignments, formalizing each assignment by a Confirmation Letter agreement that sets compensation and particulars, administering credentialing and onboarding so that a confirmed start proceeded as scheduled and as agreed, compensating Dr. Salem at the agreed rate, and reimbursing authorized expenses timely submitted with receipts.

57. Marlab breached its contractual duties by representing that credentialing for Mercy Joplin was complete and that Dr. Salem was cleared to begin, by issuing Confirmation Letters and directing him to travel, and then failing to coordinate credentialing through the start date and failing to ensure the promised and confirmed schedule.

58. Marlab further breached the Provider Agreement by failing to compensate Plaintiff for confirmed orientation and onboarding time and by failing to reimburse the authorized travel and lodging expenses timely submitted on June 25, 2025.

59. As a direct and proximate result, Plaintiff suffered damages including lost income, unreimbursed expenses, and other consequential losses.

60. The agreement contains a prevailing-party provision.

WHEREFORE, Plaintiff prays for judgment on Count I against Defendants, jointly and severally, as integrated enterprise, based upon alter-ego and successor liability for compensatory damages in an amount to be proven at trial, including lost shift income, documented travel and lodging expenses, and compensation for orientation and onboarding time, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs under the Provider Agreement and as provided by law.

## COUNT II – PROMISSORY ESTOPPEL

61. Plaintiff realleges the preceding paragraphs.

62. Marlab made clear and definite promises that credentialing was complete and that Marlab had properly handled credentialing, that Dr. Salem was set to begin at Mercy Joplin, and that he should travel and commence the confirmed schedule under the Provider Agreement and Confirmation Letters.

63. Marlab should reasonably have expected those assurances to induce reliance.

64. Plaintiff relied by traveling to Joplin, completing orientation and EMR training, accepting patient handoff, incurring travel and lodging, and reserving his calendar to the exclusion of other work that he specifically told Marlab he could have taken in the alternative.

65. Plaintiff's reliance was reasonable in light of Marlab's role, the issued Confirmation Letters, and the assurances made by Marlab to Plaintiff.

66. Injustice can be avoided only by enforcing Marlab's promises through damages that place Plaintiff in the position he would have occupied had the promises been performed.

WHEREFORE, Plaintiff prays for judgment on Count II against Defendants, jointly and severally, as integrated enterprise, based upon alter-ego and successor liability for compensatory damages in an amount to be proven at trial, including lost shift income, documented travel and lodging expenses, and compensation for orientation and onboarding time, pre-judgment and post-judgment interest, and as provided by law.

**COUNT III – NEGLIGENT MISREPRESENTATION**

67. Plaintiff realleges the preceding paragraphs.

68. In the course of its business, Marlab supplied false and inaccurate information for Plaintiff's guidance in a work assignment by stating that credentialing was complete and that Plaintiff was cleared to begin and by directing him to travel and report for orientation.

69. Marlab failed to exercise reasonable care or competence in obtaining or communicating that information despite its role and direct access to Mercy as Defendants' clint regarding credentialing and readiness of the assignment.

70. Plaintiff justifiably relied on Marlab's statements and suffered pecuniary loss that includes lost compensation, unreimbursed travel and lodging, and uncompensated orientation and onboarding time.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

By: *_/s/ Kevin J. Dolley_*

Kevin J. Dolley, #54132
HKM Employment Attorneys LLP
7382 Pershing Avenue, Suite 1W
St. Louis, MO 63130
Phone/Fax: (314) 642-6577
kdolley@hkm.com

*Counsel for Plaintiff*